JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, Kalonji Osaze, appeals from common pleas court orders granting summary judgment for defendants-appellees, the City of Strongsville and its deputy chief of police, James Spickler. Appellant contends that the court erred by finding no genuine issue of material fact with respect to his claims of racial discrimination, racial harassment, and retaliation, and by failing to draw all reasonable inferences in his favor. We find no error in the proceedings below. Therefore, we affirm the common pleas court's judgment.
 {¶ 2} Appellant filed his complaint with the common pleas court on June 26, 2003. He alleged that he is an African-American male and was subjected to racial discrimination while employed by the appellee City's police department. He claimed that he was subjected to harassment and a racially hostile work environment, and that he was disciplined and later terminated for alleged infractions while his Caucasian co-workers were not. He further claimed that defendants retaliated against him after he complained about discrimination and harassment. Finally, he asserted that appellees intentionally caused him to suffer severe emotional distress.
 {¶ 3} On July 15, 2004, appellees moved the court for summary judgment on each of appellant's claims. The court granted this motion in part on December 10, 2004, finding that (1) appellant's claim for intentional infliction of emotional distress failed because appellant did not present medical evidence of injury; (2) appellant's claims against the deputy chief of police individually failed because there was no evidence that he had the authority to hire or fire appellant or that he participated in the activities of which appellant complained; (3) appellant's claim of racial harassment failed because the harassing conduct did not rise to the level of severity and frequency required to establish a prima facie case and appellees took appropriate action to reprimand and correct the harassing conduct; (4) appellant's retaliation claim failed because appellant never filed a complaint with an administrative agency; and (5) appellant was not entitled to an award of attorney's fees because he failed to cite any statutory authority for an award of attorney's fees against a municipality.
 {¶ 4} In a separate entry filed May 9, 2005, the court granted appellees' motion with respect to appellant's claim for racial discrimination, finding no evidence that appellant was treated differently than other probationary officers. The court noted that appellant's effort to demonstrate disparate treatment as compared to other non-probationary officers failed because those officers were not similarly situated. Appellant now appeals the court's rulings.
 {¶ 5} Initially, we note that appellant does not challenge the common pleas court's judgment in favor of the deputy police chief, nor does he complain about the judgment in favor of the defendants on his claim for intentional infliction of emotional distress or his claim for attorney's fees. Accordingly, we affirm the judgment in these respects.
 {¶ 6} In his fourth assignment of error, appellant argues that the court did not draw all reasonable inferences in his favor as it was required to do under Civ.R. 56. This court reviews the trial court's judgment de novo, applying the same standard the trial court was required to apply. See, e.g., Doev. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186. If the trial court's decision-making process was faulty, this court's review will correct any such error. Therefore, we overrule the fourth assignment of error.
 {¶ 7} Appellant's first assignment of error contends that the court erred by entering summary judgment against him on his claim of racial discrimination. "In order to establish discrimination based upon race, appellant must produce some evidence of each of the following elements: 1) plaintiff is a member of a racial minority; 2) plaintiff suffered an adverse employment action; 3) plaintiff was qualified for the position; and, 4) a comparable, non-protected person was treated more favorably." Smith v.Greater Cleveland Regional Transit Auth. (May 24, 2001), Cuyahoga App. No. 78274. In this case, there is no dispute that plaintiff is a member of a racial minority or that his discharge constituted an adverse employment action. Therefore, we focus our attention on the questions whether appellant was qualified for the position and whether comparable non-protected persons were treated more favorably.
 {¶ 8} In order to demonstrate that he was qualified for the position, appellant must show not only that he was capable of performing the work, but also that he was meeting his employer's legitimate expectations. Smith, Cuyahoga App. No. 78274.
 {¶ 9} Appellant was hired in August 2000 and received training at the Ohio State Highway Patrol Academy, after which he received field training with the Strongsville Police Department. He completed his training and was recommended for solo assignment on May 14, 2001. Deputy Chief Spickler testified that police department employees' one-year probationary period begins when they complete their field training. Hence, appellant was still a probationary employee at the time of his discharge in February 2002.
 {¶ 10} Some twenty complaints about appellant were referenced in the police department's administrative files between May 2001 and February 2002, far more than any other officer. An oral and written probationary review of appellant's performance in September 2001 raised a number of concerns. Among other things, Deputy Chief Spickler was concerned that the department had performed fourteen administrative investigations concerning appellant. These investigations included reviews of six citizen complaints concerning appellant's demeanor and conduct during traffic stops in the four months since he began solo assignment. Appellant rejected an offer of additional training, but Spickler ordered appellant to use a car equipped with video and audio equipment so that a senior officer could review appellant's interactions during stops and make recommendations "that will assist you to make your contacts with the public more effective."
 {¶ 11} Spickler also noted that appellant's report-writing skills were doubtful. Specifically, Spickler said appellant's reports were not thorough, did not provide a clear understanding about what transpired, and took appellant much longer to prepare than should have been necessary. Spickler criticized appellant for his lack of initiative when responding to calls, and his failure to follow-up, and his reluctance to respond to calls assigned to him. Finally, Spickler questioned appellant's honesty in responding to some of the complaints lodged against him.
 {¶ 12} After the probationary review, the police department received at least six additional citizen complaints about appellant. Investigation revealed that one complaint was unfounded, one was not sustained (meaning there was no evidence to either sustain or reject the complaint), and the remaining four were sustained in part. Monthly reviews during this period continued to criticize appellant's incomplete and incorrect reports. The January 2002 review stated that appellant had chosen to work in a zone with few calls for service, yet failed to engage in the sort of self-initiated activity his supervisors expected, making only two traffic stops during the entire month while other probationary employees made 23, 25 and 30 stops each.
 {¶ 13} Appellant failed to demonstrate that he was qualified for the position he held. Rather, the record shows that appellant did not meet his employer's legitimate expectations, even after he was informed that his performance was unsatisfactory.
 {¶ 14} Furthermore, appellant failed to demonstrate that he was treated differently than other similarly situated employees. Regardless of whether we consider non-probationary employees to be similarly situated to appellant, there is no evidence that any other employee was the object of so many repeated complaints during such a short period of time about the same kind of behavior. Although the complaints of rudeness and unprofessional conduct were not necessarily sustained in many instances, appellant succeeded in creating that impression by, e.g., failing to acknowledge or respond to questions. The repetitive nature of the complaints indicate that appellant's skills in handling citizen encounters did not improve after he received counseling. Appellant was offered additional training to assist him in his interactions with the public, but refused it. In short, appellant did not show that other similarly situated employees received more beneficial treatment than he did.
 {¶ 15} Appellant failed to present evidence sufficient to support a prima facie case of race discrimination. Therefore, we affirm the common pleas court's order granting summary judgment on that claim.
 {¶ 16} Next, appellant complains that there were genuine issues of material fact which precluded summary judgment on his claim of racial harassment. To establish a claim of racial harassment, appellant must prove that(1) he was a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based upon his race, (4) the harassment had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile or offensive work environment, and (5) the existence of respondeat superior liability. Bell v. Cuyahoga Community College (1998),129 Ohio App.3d 461, 466.
 {¶ 17} Appellant claims that he was criticized for certain conduct while other officers were not criticized for the same conduct. Even if true, there is no evidence that this allegedly differential treatment was based on appellant's race.
 {¶ 18} The record contains evidence of three incidents involving explicitly racial comments. First, another officer posted a sheet of paper containing a printed caricature named "Afroman" with the words "I didn't steal shit jive cracker!" added to it. The officer who added the words to the caricature was warned that this conduct violated the department's racial discrimination policy and was sent to sensitivity training; the officer who actually posted the caricature was never identified.
 {¶ 19} Second, a patrolman commented during roll call that he could not meet with another patrolman "because of some dumb or stupid Afro-Man meeting." The officer in question was counseled to be more careful in his choice of words.
 {¶ 20} Finally, appellant received a voicemail message stating "Afro-Man Mother Fucker!" Investigation revealed that this message was left by a Cleveland police officer; the investigating Strongsville officer recommended that the matter be referred to the internal affairs office of the Cleveland police department.
 {¶ 21} There is no indication in the record that the Strongsville police department explicitly or implicitly approved of the conduct of appellant's co-workers or of the Cleveland police officer. Rather, the evidence demonstrates that supervisors in the police department took reasonable corrective action after investigating each incident. Therefore, we agree with the common pleas court that appellant failed to show actionable harassment.
 {¶ 22} In his third assignment of error, appellant contends that genuine issues of material fact precluded summary judgment on his claim that he was improperly discharged in retaliation for his complaints of discrimination. The specific language of R.C.4112.02(I) makes it unlawful "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Appellant only complained about discriminatory conduct by his coworkers. He neither opposed any unlawful discriminatory practice by his employer[1] nor did he make a charge, testify, assist, or participate in an investigation, hearing or proceeding under R.C. Chapter 4112. See Pulver v. RookwoodHighland Tower Investments (Mar. 26, 1997), Hamilton App. No. C-950361 950492. Therefore, we overrule the third assignment of error and affirm the trial court's judgment.
Affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J. and Cooney, J. concur.
[1] See R.C. 4112.01(A)(8), defining an "unlawful discriminatory practice" as an act prohibited by R.C. 4112.02,4112.021, or 4112.022.